## No. 17,122.

STATE HIGHWAY DEPARTMENT *v*. SWIFT ET AL.

(270 P. [2d] 751)

Decided May 17, 1954.   Rehearing denied June 7, 1954.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. JOHN E. EVANS, Assistant, for plaintiff in error.

Messrs. QUAINTANCE & JOHNSON, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THE State Highway Department, plaintiff in error, as petitioner, on May 14, 1948, filed its petition in condem-

nation on certain parcels of land in Clear Creek Canyon for the purpose of establishing a highway. It is stated this highway was made a free way. By the petition, for all purposes here, it was sought to condemn parcels of ground that later were designated as the Johnson group and the other the Quaintance group. About April of 1950, a jury trial was had to determine the compensation with respect to the parcels known as the Johnson group and the jury returned its verdict as to the value, and damages to the residue, in the total sum of $8,663.00. Following this trial, negotiations were entered into between attorneys for respondents, owners of the property known as the Quaintance group, with members of the then Attorney General's staff, particularly Mr. Cristiano and Mr. Newman, with respect to a settlement as to the Quaintance property. Attorneys for respondents testified that these negotiations were begun on the premise that the jury verdict above referred to for the Johnson group might be some basis for valuation of the Quaintance property. The parcels constituting the Johnson group were strung along approximately three miles of the canyon, while the Quaintance group of parcels comprise approximately seven miles of the canyon where the highway was to be constructed. The verdict as to the Johnson property approximated $3,000.00 per mile, and that sum was used as an opener for the negotiations on the Quaintance property. The representatives of the Attorney General's office proposed a settlement on this basis, which would be $21,000. Respondents countered with a proposal of $4,000 per mile, or $28,000; however, an agreement was reached for the compromise at $25,000. In connection with this compromise agreement, respondents wanted an easement along the highway right of way for the construction of a hydroelectric power pipe line, the right to place small water turbine electric generator units at various points in Clear Creek within the right of way, and access to the highway at various points for the use of prospective cabin sites

along the canyon which constituted a part of the residue of the Quaintance property. The state highway engineer advised the members of the Attorney General's staff that if they could settle on the basis of $25,000.00, the Highway Department would be agreeable if "the points which Mr. Quaintance had requested as access to and from the highway could be agreed upon as being safe, both from the viewpoint of the traffic on the highway and safety to the structure itself, the highway embankments, etc." The highway being a free way naturally has only such access to the highway as is permitted by the Highway Department, and therefore it was necessary that the points of access affecting the Quaintance property must be determined.

It was arranged between counsel that a representative of the Highway Department visit Clear Creek Canyon with Mr. Quaintance for the purpose of agreeing on the locations of such access points and thus permit settlement of the case. Such representative of the Highway Department was the chief designer of the department who accompanied Mr. Quaintance on this two-day trip into the canyon. Following this view of the situation, the highway representative made and filed his report listing the access points agreed upon.

Prior to the receipt of the report of the highway representative as to the access points, and other matters, a stipulation as to the settlement was prepared and signed by the representatives of the Attorney General's office. Upon receipt of this highway representative's report referred to herein as the Marshall report, counsel for respondents again typed the first page of the stipulation, being paragraph two thereon, and attached the Marshall report to the stipulation, which in its then form was the basis of the judgment entered in the district court.

As to the stipulation, there is some conflict in the testimony as to whether the signature page on the stipulation containing the names of the representatives of the Attorney General's office was signed before the change

in the stipulation and before the so-called Marshall report relative to the access points was attached. Mr. Newman testified that when the signature page was signed by the Attorney General's representatives, the list of the access points and the maps were not attached thereto, and that neither respondents nor their attorneys sent the stipulation back to him after such lists were attached. Mr. Cristiano testified to the same effect. Mr. Breitenstein, one of counsel for respondents, testified he did not recall when the stipulation was signed by a member of the attorney general's office. He thought that the signature page was again typed after the list of the access points was received; however, he could not state positively that the descriptions and the maps were attached to the stipulation at the time of the signatures by the Attorney General's representatives. Mr. Evans, another attorney for respondents, first testified that the stipulation was signed by the Attorney General's representatives after the description of the access points and maps were attached, but subsequently he testified that the stipulation may have been signed before that. It is undisputed that Breitenstein and Evans again typed the first page of the stipulation, particularly changing paragraph two thereof. Mr. Quaintance, one of the respondents, took the stipulation to the county court of Jefferson county for approval in the Quaintance Estate and it then was filed with the clerk of the district court on August 29, 1950 and approved by the judge thereof.

The $25,000 was deposited with the clerk of the district court and the judge signed the rule and order on the Quaintance parcels. Soon following this date, it was made known by the Quaintance group respondents, that they claimed that the stipulation as it then stood had obligated the petitioner to construct six bridges which would connect up the access roads. This contention was denied by the attorney general's office and it appears from the testimony of the bridge engineer that if such bridges were constructed the price would vary, accord-

ing to material used, from $60,000 to a total of approximately $162,000, and it further was shown that one of the bridges claimed to be required by the Quaintance group would connect the highway with the residue of the property of the Johnson group, and that two of the access stations were entirely outside of the highway right of way. The state highway engineer testified that he never approved or authorized any agreement to construct any bridges as contended for; that the stipulation was never approved orally or in writing by him, or by the Governor of the State of Colorado, of the comptroller of the State of Colorado, or the highway advisory board; and that there was no provision in the budget for the construction of these bridges. Marshall testified that any reference in his report to bridges was a matter of description of the nature of the structures approaching the highway so that the approach platforms at the edge of the highway would be designed accordingly; and further, that the bridges contended for would not connect with any public highway or road and would connect with private property only. Both of the attorneys and respondents testified that the matter of the construction of bridges was not discussed with the representatives of the Attorney General's office at any time during the negotiations for settlement. After this dispute or contention arose all of the attorneys involved met in discussion of the situation and the representatives of the Attorney General's office objected to the stipulation as finally filed as containing any suggestion about bridges. The conversations and statements made by counsel in this meeting were not permitted to be related by the trial court, which rejected an offer of proof with respect thereto. On January 5, 1951, a member of the Attorney General's office filed a "Petition for Construction of Stipulation" which later was withdrawn upon the filing of a "Motion to Withdraw Stipulation and Vacate Order." After hearing and arguments, and the filing of briefs, the trial court denied the motion to construe or

withdraw the stipulation. The writ of error issued herein. As points for reversing the judgment, the Attorney General presents the following:

"1. The purported Stipulation does not require the petitioner to construct the bridges contended for by the Quaintance group respondent, and it should be so construed. At most, the wording of the Stipulation is ambiguous and the testimony shows it was not the intention to have the petitioner obligated to construct any bridge.

"2. Even if the purported Stipulation is construed as clearly providing that the petitioner will construct the bridges contended for by respondents, the petitioner should be allowed to withdraw and cancel the same. The attorneys were the only persons signing the purported Stipulation and the Attorney General's office had no authority to bind the petitioner to an obligation to build bridges. The question of bridge construction did not enter into the negotiations between the attorneys.

"3. There was no meeting of the minds on the purported Stipulation upon which the contention that the petitioner is obligated to build bridges is based. This purported Stipulation is not the document that was signed by the Attorney General's Office. After the signature page was signed by the Attorney General's office, the first page of the Stipulation was materially changed and in addition there was attached a list of the locations of the access points which were taken out of the context of a report and labeled 'Description of Location of Access Roads.'

"4. The purported Stipulation is void or voidable because it was not approved by the Controller of the State of Colorado and because no funds were budgeted for the bridges contended for by respondents.

"5. The purported Stipulation was merged in the two judgments of the District Court, each denominated 'Rule and Order.'

"6. If the purported Stipulation is construed as requiring the construction by petitioner of the bridges con-

tended for, the same would amount to an unconscionable compromise and would impose undue hardship upon the people of the State of Colorado.

"7. The District Court erred in refusing to permit the petitioner to adduce statements and admissions of Attorneys for respondents through testimony of other witnesses and in refusing to admit into evidence petitioner's Exhibit 'B,' an official document prepared pursuant to order of the Attorney General.

"8. The District Court erred in denying petitioner's Amended Motion to Construe or Withdraw Stipulation and in ruling that the Stipulation became a judgment of the Court."

Respondents are attempting to have read into the stipulation something that is not there. The only part of the stipulation under which respondents make this claim is paragraph two thereof, which is as follows: "That the petitioner shall construct within a reasonable time access roads from the new highway across the above described parcels and across parcels 5, 6 and 6A at such places as are designated on the map and descriptions attached hereto and made a part of this stipulation." This cannot be construed as requiring petitioners to construct any bridge. This being a free way, there is limited access to it and it was necessary here, if there was to be such access points, that they be agreed upon. If the contention for the bridges is tied to and claimed to be supported by the Marshall report attached to the stipulation, the last sentence of that report should dispel any such contention where it is stated, "It appears that the balance of the approach roads should be built to accommodate the bridges and local road systems when and if they are constructed for the cabin site development."

Under all the circumstances here, the stipulation upon which the judgment order was entered cannot be interpreted as requiring petitioner to construct bridges,

420

as has hereinbefore been stated, and all parties thereto are otherwise bound by the judgment as it now stands.

The judgment is affirmed.